**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JONATHAN CHRISTOPHER BELL,

       Petitioner,

v.                           Case No. 3:16-cv-1084-J-32JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

       Respondents.

_____

**<u>ORDER</u>**

**I.**   **<u>Status</u>**

     Petitioner, Jonathan Christopher Bell, an inmate of the Florida penal system, initiated this case by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. <u>See</u> Doc. 1 (Petition). Petitioner challenges a state court (Duval County, Florida) judgment of conviction for armed burglary and resisting an officer without violence. Doc. 1 at 1. He is currently serving a twenty-five-year term of incarceration with a fifteen-year minimum mandatory as a Habitual Violent Felony Offender. Respondents filed a Response (Doc. 16; Resp.)[1] and Petitioner declined to file a reply (Doc. 20). This case is ripe for review.

---

     [1] Respondents also filed exhibits. Docs. 16-1 to 16-4. The Court refers to the exhibits as "Resp. Ex."

## II.    Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

2

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747–748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).

[3] Wainwright v. Sykes, 433 U.S. 72 (1977).

show either (1) cause for and actual prejudice from the default; or (2) a fundamental

miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for

a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive

consideration on the merits of a procedurally defaulted claim if the petitioner can

establish that a fundamental miscarriage of justice, the continued incarceration of one

who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[4] Murray v. Carrier, 477 U.S. 478 (1986).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth

Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.  Analysis

**Grounds One through Fifteen[5]**

In Grounds One, Two, Three, Four, Five, Seven, Ten, and Eleven, Petitioner asserts that trial counsel was ineffective for failing to object to various arguments that the prosecutor made during his opening and closing arguments. He raised identical claim in grounds one, two, three, four, five, seven, ten, and eleven of his amended motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.[6] Resp. Ex. C1 at 133-35. The trial court addressed them collectively as follows:

> In Grounds One, Two, Three, Four, Five, Seven, Ten, and Eleven, Defendant argues counsel rendered deficient performance for failing to object to several arguments the prosecutor made throughout the course of trial. This Court specifically addresses each issue herein.
>
> As to the merits of the comments at issue, the proper method for reviewing the effect, and therefore, the prejudice of the prosecutor's comments, is to place them in context. Rose v. State, 985 So. 2d 500, 508 (Fla. 2008); Ham v. State, 580 So. 2d 868 (Fla. 1991). Further, attorneys are allowed wide latitude to argue to the jury during closing argument. Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982). Attorneys may also draw logical inferences and advance legitimate arguments in their closing statements. Thomas v. State, 748 So. 2d 970, 984 (Fla. 1984). Therefore, when a defendant claims a prosecutor has made an improper comment during

---

[5] Respondents argue that Petitioner failed to exhaust Grounds One through Fifteen because he did not present the federal constitutional nature of these claims in state court. Resp. at 6-50. However, because Grounds One through Fifteen are premised upon claims of ineffective assistance of counsel as set forth in Strickland, and Petitioner raised these claims in his Rule 3.850 motion and appealed the denial therefrom, the Court finds that Petitioner did exhaust Grounds One through Fifteen in state court.

[6] The trial court dismissed Petitioner's initial Rule 3.850 motion and directed Petitioner to file an amended motion. Resp. Ex. C1 at 131.

closing argument such that a new trial is required, the defendant must show

> the comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.

Walls v. State, 926 So. 2d 1156, 1167 (Fla. 2006) (citing Spencer v. State, 645 So. 2d 377, 383 (Fla. 1994)). Ultimately, "trial counsel cannot be deemed ineffective for failing to object to arguments that are proper." Rogers v. State, 957 So. 2d 539, 549 (Fla. 2007).

In the instant case, this Court finds the prosecutorial arguments at issue, taken as a whole and placed in context, were not improper, such to warrant objections from counsel. (Ex. F at 219-228, 416-34, 454 - 69.) The comments argued to the jury the evidence and inferences made from the evidence. See id. The arguments summarized the evidence anticipated and presented during trial, and offered a conclusion, based on the evidence, that supported the State's theory of the case. As such, counsel was not ineffective for failing to object to the prosecutorial comments. See Rogers, 957 So. 2d at 549. Moreover, this Court finds it is not reasonably likely that, had counsel objected to the arguments at issue, the outcome of Defendant's trial would have been different. Because Defendant has failed to establish the requirements of Strickland, Grounds One, Two, Three, Four, Five, Seven, Ten, and Eleven are denied . . . .

Resp. Ex. C1 at 258-59. The trial court then addressed each claim individually. Id. As described below, the Court finds that the state court's adjudication of these claims is entitled to deference.

***Ground One***

Petitioner alleges that trial counsel was ineffective for failing to object and move for a mistrial when the state, during opening arguments, told the jury that Petitioner's co-defendant Donte Shoats was already convicted of the same charges for which Petitioner was on trial. Doc. 1 at 4. He argues that this comment was prejudicial to Petitioner because the state prosecuted Petitioner on a principal theory. Id.

Petitioner raised this claim as claim one of his Rule 3.850 motion. Resp. Ex. C1 at 133-35. The trial court denied the claim, finding in relevant part:

> First, Defendant argues counsel should have objected and/or moved for a mistrial when the State told the jurors during opening argument that Defendant's co-defendant "was already convicted of the same charges in this case that the Defendant was on trial for." The entire context of the argument in question follows, with the portion at issue emphasized:
>
> > Now, members of the jury, I also expect that you may hear from Mr. Shoats. He may get on the stand and testify before you today. **I want to make something clear right now, he's convicted of the same charge as this defendant.** He's just as guilty as this defendant. He is by no means a model citizen of our society. He is a convicted felon. He has a crime of dishonesty in his past.
> >
> > I don't really know what he's going to tell you about his involvement in the burglary. Frankly I don't really care because I do know two things he will tell you is that on January 4th, 2011 he was with this defendant, Jonathan Bell, and the other defendant, Ernest Smith, the one who was in his boxer shorts and socks. He will tell you those two - and then all three of those individuals then went into the back yard of that house. He

> will tell you those two things.

(Ex. F at 226-27.)

> Initially, this Court notes the two cases upon which Defendant seeks to rely, <u>Thomas v. State</u>, 202 So. 2d 883, 884 (Fla. 3d DCA 1967), and <u>Moore v. State</u>, 186 So. 2d 56 (Fla. 3d DCA 1966), were overruled by the Florida Supreme Court in <u>Bell v. State</u>, 965 So. 2d 48, 56 (Fla. 2007). Furthermore, the trial record indicates Mr. Shoats testified as a State witness against Defendant during trial. (Ex. F at 286.) The prosecutor's opening argument that Mr. Shoats had previously been convicted of the instant crime properly anticipated Mr. Shoats's direct and cross-examination testimony, and reached to Mr. Shoats's credibility or bias as a witness. <u>See Bell</u>, 965 So. 2d at 56 (citing § 90.608, Fla. Stat. (1995)); <u>Williamson v. State</u>, 511 So. 2d 289, 291 (Fla. 1997). Indeed, the prosecutor's argument commented on evidence he anticipated the State would present during trial, and offered the jurors a suggestion as to how the jurors should weigh Mr. Shoats's testimony. As such, this Court finds counsel did not render deficient performance for failing to object to a proper argument. <u>See Rogers</u>, 957 So. 2d at 549. Accordingly, Ground One is denied.

Resp. Ex. C1 at 259-60. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. "Where, as here, the codefendant is a witness at trial, subject to the rigors of cross-examination, disclosure of [a codefendant's guilt] to blunt the impact of attacks on [his] credibility serves a

---

[7] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

legitimate purpose and is permissible." U.S. v. Melton, 739 F.2d 576 (11th Cir. 1984) (quoting U.S. v. Veltre, 591 F.2d 347, 3499 (5th Cir. 1979)).

During opening statements, the prosecutor noted each witness the state intended to present and summarized their respective testimony, including co-defendant Shoats. Resp. Ex. B3 at 226. In summarizing Shoats' testimony, the prosecutor stated that Shoats "was convicted of the same charge" as Petitioner. Id. However, a review of Shoats's trial court docket shows that while Shoats had been charged with the armed burglary and resisting officer offenses at the same time as Petitioner, Shoats had not yet been adjudicated guilty of the crimes at the time of Petitioner's trial. See State v. Shoats, 2011-CF-154-AXXX (Fla. 4th Cir. Ct.). Shoats testified at Petitioner's trial on October 20, 2011, and he entered pleas of guilty to the crimes and was sentenced on November 1, 2012. Id.

Nevertheless, while the prosecutor's opening argument may have been a misstatement, the prosecutor merely wanted to acknowledge that Shoats' trial testimony would show that he participated in the crimes, but that guilt or culpability should not influence his credibility with the jury. Indeed, Shoats testified at trial that he, along with Petitioner, burglarized a home and were subsequently charged with armed burglary and resisting an officer without violence. Id. at 287-91. He further testified that he had one prior felony conviction and a conviction for a crime of dishonesty. Id. Thereafter, trial counsel was able to cross-examine Shoats at length. Id. at 292-308.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Applying AEDPA deference, the claims in Ground One are due to be denied.

### Ground Two and Ground Eleven

In Ground Two, Petitioner contends that trial counsel was ineffective for failing to object when the prosecutor argued the principal theory to the jury and the trial court instructed the jury on the principal theory. Doc. 1 at 6-7. In Ground Eleven, Petitioner again asserts that counsel was ineffective for failing to object and move for a mistrial when the state, during closing arguments, argued that Petitioner was guilty under the principal theory, which led the jury to believe that it could find that Petitioner actually possessed a firearm under the principal theory. <u>See id.</u> at 23.

Petitioner raised these claims in grounds two and eleven of his Rule 3.850 motion. Resp. Ex. C1 at 137-38, 158-59. The trial court denied the claims, finding in pertinent part:

> In his second and eleventh grounds for relief, Defendant argues counsel should have objected and/or moved for a mistrial when the State argued the principal theory to jury. In support, Defendant contends the State did not charge him as a principal to the crime in the charging information, as it fails to cite section 777.011, Florida Statutes, even though the principal theory was an essential element. Thus, he contends, he was convicted of an uncharged offense, and counsel should have objected. In both Grounds,

Defendant avers counsel failed to object/move for a mistrial when the judge provided the jurors with instruction on the principal theory.

This Court finds Defendant is not entitled to relief. Foremost, "[t]he purpose of an information is to fairly apprise defendant of the offense with which he is charged." Leeman v. State, 357 So. 2d 703, 705 (Fla. 1978). Further, Florida law dictates the following with respect to a charging information filed by the State:

> (o) **Defects and Variances.** No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.

Fla. R. Crim. P. 3.140(0) (2010). See Baker v. State, 4 So. 3d 758, 760-61 (Fla. 1st DCA 2009) see also Miller v. State, 42 So. 3d 204, 216-17 (Fla. 2010), reh'g denied (Aug. 9, 2010), cert. denied, 131 S. Ct. 935 (2011); State v. Taylor, 283 So. 2d 882, 885 (Fla. 4th DCA 1973).

The charging information shows the State charged Defendant with Armed Burglary. (Ex. G.) This Court finds the face of the information shows it was not so vague, indistinct, and indefinite, such that it misled Defendant and embarrassed him in his trial preparation. Therefore, an objection to the information would have lacked merit.

Further, Defendant was not convicted of an uncharged crime. Despite Defendant's contentions, the principal theory is not an element of Armed Burglary. See § 810.02(2)(b), Florida Statutes (2010). Thus, the law did

not require the State to allege the principal theory in the charging information. Therefore, because the information was not deficient, had counsel objected or moved for a mistrial based on the State arguing the principal theory during trial, or the jury receiving such instructions, such challenges would have been without merit and denied. Counsel was not ineffective for refraining from raising a non-meritorious objection or motion. See Willacy v. State, 967 So. 2d 131, 140 (Fla. 2007) (citing Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986)) (stating "counsel is not ineffective for failing to make a futile objection"); Branch v. State, 952 So. 2d 470, 476 (Fla. 2006) (holding counsel cannot be ineffective for failing to file motion which would have been properly denied). Ground Two and Ground Eleven are denied.

Resp. Ex. C1 at 260-62. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. In so far as Petitioner takes issue with the reading of the principal theory generally, "[u]nlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'" Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). "If there is no basis in the record for the instruction given, such error may raise a 'substantial and ineradicable doubt as to whether the

_____

[8] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

jury was properly guided in its deliberations,' and reversal may be required." Pesaplastic, C.A. v. Cincinnati Milacron Co., 750 F.2d 1516, 1525 (11th Cir. 1985) (quoting McElroy v. Firestone Tire & Rubber Co., 894 F.2d 1504, 1509 (11th Cir. 1990)). "Aiding and abetting need not be specifically alleged in the indictment; assuming the evidence supports it, the accused can be convicted of aiding and abetting so long as the jury is instructed on it." United States v. Martin, 747 F.2d 1404, 1407 (11th Cir. 1984).

Here, the victim's neighbor, Ann Smith, testified that she was making lunch in her kitchen when she looked out the window and saw three black males in their twenties or thirties, wearing black shirts and caps, standing near the victim's fence. Resp. Ex. B3 at 236-40. She saw all three men jump the victim's fence, rip the screen off the back door, and enter the victim's home. Id. at 240-42. She stated that the men were inside the victim's home for approximately three minutes when one of the men exited and stood as an apparent lookout for the other two males. Id. at 243-44. Smith called 911 and while she was on the phone, the three men ran out of the victim's home and across Smith's yard. Id. A recording of Smith's 911 call was played for the jury. Id. at 247-55. Further, another one of the victim's neighbors, Linda Varmecky, testified that her surveillance cameras recorded the men crossing her yard. Id. at 275. The surveillance video was played during co-defendant Shoats' trial testimony and Shoats identified Petitioner as one of the individuals depicted in the video footage. Id. at 290.

Officer Charles Ray testified that he responded to the 911 call and as he was entering the neighborhood, Richard Sonnenberg, another neighbor, flagged Officer Ray down and advised that the three men were in his backyard. Id. at 282. Officer Ray got

out of his vehicle and as soon as the three men saw him, they began to run. Id. at 325-26. Officer Ray commanded that the men stop, but they refused. Id. at 326. Officer Ray chased them into a muddy retention pond where he finally apprehended Petitioner. Id. at 329.

Officer Brian Myers testified that he when he arrived at the victim's home, he noticed damage to the victim's back door. Id. at 312. Officer Myers saw a firearm lying on the ground of the victim's sunroom. Id. He also saw a second firearm leaning against the privacy fence dividing the victim and Smith's backyards. Id. at 312-15. The victim, George Meyers, testified that he was out of town at the time of the burglary and no one had permission to enter his home while he was gone. Id. at 264. The victim explained that his back door was broken into, his firearm had been moved, and his personal items had been ransacked. Id. at 266-69. The victim stated that his watch, class ring, and a pocketknife were missing from his bedroom, and he stated that his ammunition was found in the backyard. Id. at 266-71.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceedings.[9] There was sufficient evidence showing that Petitioner participated in and assisted his co-defendants during the armed burglary. As such, counsel was not deficient in failing to object to the use of the principal theory instruction. Grounds Two and Eleven are due to be denied.

### Ground Three

Petitioner maintains that trial counsel was ineffective for failing to object and move for a mistrial when the prosecutor, during closing arguments, stated that "what this case comes down to is whom was the jury going to believe, Petitioner or the State's witnesses in determining whether Petitioner was guilty or not guilty." Doc. 1 at 8.

Petitioner raised this claim as ground three of his Rule 3.850 motion. Resp. Ex. C1 at 139-40. The trial court denied the claim as follows:

> Third, Defendant argues counsel should have objected when the State argued "what this case comes down to is whom was the jury going to believe." Defendant contends the State's argument improperly distorted the burden of proof. In support of his argument, Defendant cites Cole v. State, 866 So. 2d 761 (Fla. 1st DCA 2004).
>
> Here, this Court finds, placed in context, the instant argument was not improper, such to warrant an objection from counsel. Rather, placed in context, this argument was made during rebuttal argument, and demonstrates the prosecutor summarized the

---

[9] In Florida, possession of a firearm "at any time during the course of a criminal endeavor" comports with the statutory requirements of armed burglary. Williams v. State, 517 So. 2d 681, 682 (Fla. 1988); see also Jones v. State, 599 So. 2d 741 (Fla. 3d DCA 1992) (affirming armed burglary conviction of defendant who was unarmed prior to entering dwelling and took possession of the victim's firearm for a brief time, with intent to pawn firearm, but left the gun inside burglarized home).

> evidence placed before the jurors. (Ex. F at 454-69.)
> The prosecutor's argument was consistent with one
> theme: how the jurors should evaluate the evidence
> presented, by making credibility determinations.
> Therefore, counsel was not ineffective for failing to
> object to proper argument, especially since prosecutors
> are allowed wide latitude in making their closing
> arguments. Ground Three is denied.

Resp. Ex. C1 at 262. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire closing argument and the trial as a whole, because "[c]laims of prosecutorial misconduct are fact-specific inquiries which must be conducted against the backdrop of the entire record." United States v. Hall, 47 F.3d 1091, 1098 (11th Cir.1995); accord United States v. Young, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial."). In context, the Court finds that the prosecutor's comments were not an improper shifting of the burden of proof, but rather were a summary of the evidence given in rebuttal to Petitioner's closing

---

[10] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

argument. Resp. Ex. B4 at 456. Notably, the state presented an ample amount of evidence that Petitioner participated in the armed burglary (Resp. Ex. B3 at 290) and Petitioner wholly denied involvement during his trial testimony (Resp. Ex. B4 at 392-93). As such, counsel was not deficient for failing to object.

Accordingly, upon review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Three is due to be denied.

### Ground Four

Petitioner asserts that trial counsel was ineffective for failing to object and move for a mistrial when the state, during closing arguments, vouched for the credibility of state witness Officer Ray. Doc. 1 at 9.

Petitioner raised this claim as ground four of his Rule 3.850 motion. Resp. Ex. C1 at 141. The trial court denied the claim as follows:

> Fourth, Defendant avers counsel should have objected/moved for a mistrial when the State, in its closing argument, improperly vouched for the veracity of Officer Ray. Specifically, Defendant contends the State improperly argued "Officer Ray is still a Officer and that Officer Ray has no reason to lie, Officer Ray was just doing his job." In the alternative, Defendant argues the effect of this argument, when viewed cumulatively with the argument the State made in Ground Three, constitutes harmful error.

> The Fifth District Court of Appeal recently found counsel did not render ineffective assistance of counsel for failing to object to a prosecutor's statement, made

during closing argument, that a version of events offered by police officers was "true and correct." <u>Moore v. State</u>, 74 So. 3d 547, 550 (Fla. 5th DCA 2011). The court reasoned that because the prosecutor followed said statement by arguing it was [the] jury's job to determine the facts, an objection to the prosecutor's statement would not have warranted a mistrial. <u>Id.</u>

Here, placed in context, this Court finds the prosecutor's argument was not improper. (Ex. F at 456-58, 463-67.) The prosecutor summarized the evidence placed before the jurors, including the testimony provided by Officer Ray, and drew logical inferences from said evidence. The prosecutor did not focus only on Officer Ray's testimony through his argument. (Ex. F at 456-58, 463-67.) As such, this Court adopts its findings <u>supra</u> denying Ground Three, and adopts them herein. Ground Four is denied.

Resp. Ex. C1 at 292-63. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[11] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Again, in mentioning Officer Ray's testimony, the prosecutor was merely summarizing the evidence presented at trial. Resp. Ex. B4 at 456-58. Notably, the prosecutor distinguished Officer Ray's testimony that Petitioner immediately began running when he commanded Petitioner to stop (Resp. Ex. B3 at 330), and Petitioner's trial testimony that Officer Ray never made such demands or engaged in a foot chase that ended in a retention pond (<u>id.</u> at 396-

---

[11] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

97). As such, upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Four is due to be denied.

### Ground Five

Petitioner argues that trial counsel was ineffective for failing to object and move for a mistrial when the state, during closing arguments, commented on Petitioner's right to remain silent. Doc. 1 at 11.

Petitioner raised this claim as ground five of his Rule 3.850 motion. Resp. Ex. C1 at 143. The trial court denied the claim, reasoning in relevant part:

> In his fifth argument, Defendant asserts counsel should have objected/moved for a mistrial when the State commented on his right to remain silent when an officer encountered him after the crime occurred and Defendant said nothing to the officer. Defendant argues harmful error occurred through the State's argument because "[t]he State's evidence of the Defendant's case is far from conclusive. Where the State had no physical evidence placing the Defendant at the scene of the crime and as a participant in the events."

> To the extent Defendant seeks to challenge the sufficiency of the evidence presented against him to prove he committed Armed Burglary, couched in terms of ineffective assistance of counsel for refraining from objecting to the argument discussed, such a claim is procedurally barred. See Johnson v. State, 985 So. 2d 1215, 1215 (Fla. 1st DCA 2008) (finding claim alleging "insufficiency of the evidence to prove escape . . . [is] not cognizable in a collateral postconviction motion"); Betts v. State, 792 So. 2d 589, 590 (Fla. 1st DCA 2001) (citing

<u>Jackson v. State</u>, 640 So. 2d 1173 (Fla. 2d DCA 1994)
(stating, with respect to defendant's postconviction
challenge to factual basis and sufficiency of evidence
presented against him, "such claims cannot be raised in
a Rule 3.850 motion")); <u>Jackson v. State</u>, 640 So. 2d 1173,
1174 (Fla. 2d DCA 1994) (citing <u>Morris v. State</u>, 422 So.
2d 338 (Fla. 3d DCA 1982) (holding "it is well-settled that
insufficiency of the evidence cannot be raised under rule
3.850, especially when a direct appeal has been taken")).
Indeed, Defendant appears to disagree with the
prosecutor's comments because he takes issue with the
State's theory of the case and the evidence the State
presented against him in support of its theory.

Assuming <u>arguendo</u> Defendant's argument was not
procedurally barred, it still fails. Placed in context, the
argument sought to summarize for the jurors the
meaning of the term "reasonable doubt." The entire
argument follows, with the portion with which Defendant
takes issue highlighted:

> Reasonable doubt, it's not a mere possible,
> speculative, imaginary or forced doubt. Such
> a doubt must not influence you to return a
> verdict of not guilty. If you have an abiding
> conviction of guilt, members of the jury, you
> would have to force yourself to believe that
> there was another man in all black running
> around with them who happened to not get
> caught with all the canine and all the police
> present in that area, with the air units and
> everything, and they were there for a good
> three hours. You would have to believe that
> there was another person that just happened
> to get away.

> And this defendant per what he said, he said
> he wasn't even there. He wasn't even behind
> the house. He said that he's just walking
> around the neighborhood and the officer came
> up to him. **He didn't admit anything. He
> didn't say that, oh, yeah, I did run across
> the woods. I did hide in the ditch. I did go
> in the mud and the swamp.**

> As Officer Ray testified he said he wasn't
> even there. That makes no sense, members
> of the jury, none at all, and I would say you
> should [not] believe that because you would
> have to force yourself to believe his story
> over Officer Ray's testimony.
>
> (Ex. F at 466-67.) Placed in context, this Court finds the
> prosecutor's highlighted comment would not have been
> viewed by [the] jury as a comment on defendant's right to
> remain silent. Specifically, the prosecutor went on to
> argue what Defendant <u>did</u> say and how Defendant <u>did
> not</u> remain silent. <u>Moore v. State</u>, 74 So. 3d 547, 550 (Fla.
> 5th DCA 2011) (finding because prosecutorial comment,
> placed in context, would not have been viewed by jury as
> comment on defendant's right to remain silent, counsel
> was not ineffective for failing to object to comment); <u>see
> also</u> <u>Green v. State</u>, 27 So. 3d 731, 736-37 (Fla. 2d DCA
> 2010) (finding improper prosecutor's argument telling
> jurors defendant exercised right to remain silent prior to
> and after arrest). Ground [Five] is denied.

Resp. Ex. C1 at 263-65. The First DCA per curiam affirmed the trial court's denial

without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the

merits,[12] the Court will address the claim in accordance with the deferential standard

for federal court review of state court adjudications. This argument, taken in its proper

context, was not an impermissible comment on Petitioner's right to remain silent. <u>See</u>

<u>United States v. Blankenship</u>, 382 F.3d 1110, 1128 (11th Cir. 2004) (a prosecutor's

statement violates a defendant's right to remain silent if it was "manifestly intended

---

[12] In looking through the appellate court's affirmance to the circuit court's
"relevant rationale," the Court presumes that the appellate court "adopted the same
reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

to be a comment on the defendant's failure to testify" or was "of such a character that a jury would naturally and necessarily take it to be a comment" on the defendant's failure to testify). Instead, the prosecutor was again comparing Petitioner's trial testimony to Officer Ray's testimony. Reasonable competent counsel could have concluded that objecting to the comment would have been futile. Thus, upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Five is due to be denied.

### *Ground Seven*

Petitioner claims that trial counsel was ineffective for failing to object/move for a mistrial when the state made comments shifting the burden of proof during closing arguments. Doc. 1 at 16. He argues that the state improperly indicated that the jury could reach its verdict by "guess work" or "assumption." Id.

Petitioner raised this allegation in ground seven of his Rule 3.850 motion. Resp. Ex. C1 at 149. The trial court denied the claim as follows:

> In his seventh argument, Defendant avers counsel should have objected/moved for a mistrial when the State misled the jurors by distorting the burden of proof during its closing argument. Specifically, Defendant takes issue with the State's argument analogizing reasonable doubt with a jigsaw puzzle which, Defendant alleges, indicated the jurors may resort to "guess work or assumption" in reaching their verdict.

The argument with which Defendant takes issue, placed in context, follows:

> The state does have a high – a burden of proving every element beyond a reasonable doubt and you are instructed to rely upon your common sense in deciding whether the defendant is guilty or not guilty, whether his story holds water or whether the evidence proves beyond a reasonable doubt he is, in fact, guilty, and reasonable doubt is not 100 percent certainty. It's not proof beyond all possible doubt. It's proof beyond a reasonable doubt.
>
> And in jury selection the example was given of anybody who has done a jigsaw puzzle as a child that you can complete part of the **puzzle, see what the image is and know what it is without seeing all the pieces, so again if you have a question about a piece of evidence and it doesn't go to the elements [it] shouldn't influence you to return a verdict of not guilty.**
>
> Ladies and gentlemen, the state appreciates your time and again we ask that you rely upon your common sense, that your verdict not be based on bias, prejudice, or sympathy. It's perfectly natural for a juror to feel bad for the position the defendant is in. However, it is not the role of juror to decide what a sentence is going to be, to feel bad for a defendant, simply to look at the evidence, apply your common sense and come up with a just verdict and the state trusts that you will, that the defendant is guilty of both armed burglary as well as resisting an officer without violence.

(Ex. F at 432-34) (emphasis added). This Court finds that, with the instant argument, the State explained the concept of reasonable doubt to the jurors. This argument was not improper. Therefore, counsel was not ineffective

for refraining from objecting to it. Ground Seven is denied.

Resp. Ex. C1 at 265-66. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[13] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, and viewing the prosecutor's argument in context, the Court does not find that this statement improperly shifted the burden of proof. As such, the state court's adjudication denying relief is neither contrary to nor an unreasonable application of Strickland because Petitioner cannot demonstrate deficient performance or prejudice from counsel's failure to object. Also, the state court's adjudication was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The claim in Ground Seven is due to be denied.

### Ground Ten

Petitioner asserts that trial counsel was ineffective for failing to object/move for a mistrial when the prosecutor, during closing arguments, improperly stated that "one of the defendants in this case was in possession of a firearm, and that therefore constitutes the armed burglary, and that therefore the defendants all are guilty of armed burglary." Doc. 1 at 21. According to Petitioner, this statement presented facts

_____

[13] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

not in evidence. Petitioner also alleges that the DNA expert Jeannelyn Adona's opinion

testimony that a lack of DNA evidence does not mean that the suspects in this case

did not possess the subject firearms bolstered the state's improper comments. Id.

Petitioner raised this claim as ground ten of his Rule 3.850 motion. Resp. Ex.

C1 at 155-57. The trial court summarily denied the claim as follows:

> Tenth, Defendant argues counsel should have objected/moved for a mistrial when the State commented on facts not in evidence. Similarly, Defendant avers counsel should have objected/moved for a mistrial when State witness Ms. Jeannelyn Adona's opinion "bolstered" the State's improper commentary on facts not in evidence, which resulted in a discovery violation. Defendant argues the cumulative effect of counsel's errors in this argument and eleven of his other arguments amounted to harmful error that deprived him of a fair trial.

> As to Defendant's first allegation that the State argued facts [not] in evidence, this Court finds this allegation to be without merit. Pursuant to prevailing Florida case law, prosecutors are permitted to draw logical inferences from the evidence presented. The prosecutor in the instant case, with the instant argument at issue, argued within said parameters. (Ex. F at 421-26.) This Court finds that, placed in context, the prosecutor properly summarized the evidence provided by Ms. Adona, and offered a logical conclusion based on the evidence. (Ex. F at 421-26.) Therefore, had counsel objected to this argument, such an objection would have been without merit and denied.

> As to Defendant's latter argument regarding Ms. Adona's testimony, this Court also finds this argument fails. The State disclosed Ms. Adona as a State witness through its First Supplemental Discovery Exhibit, filed May 13, 2011. (Ex. H.) As such, this Court finds, the State did not commit a discovery violation.

> As for Defendant's argument that Ms. Adona improperly bolstered the State's comments, this Court

finds Ms. Adona properly offered her opinion as an expert DNA [analyst]. At the time of her trial testimony, Ms. Adona had qualified to testify about a certain type of DNA test, STR DNA testing, approximately seven times in Florida courts. (Ex. F at 359-61.) Ms. Adona conducted STR DNA testing in Defendant's case, specifically of a handgun and a handgun magazine found at the crime scene, both of which she swabbed for DNA. (Ex. F at 361-64.) Ms. Adona received complete DNA profiles from Defendant and his two co-defendants, which she compared to her analysis of the handgun swabs and magazine swabs. (Ex. F at 364.) She testified she was able to exclude the defendants as being contributors to the DNA swab obtained from the handgun. (Ex. F at 365.) However, Ms. Adona testified, this does not mean Defendant or the other co-defendants did not handle or touch the handgun. (Ex. F at 366.) Specifically, Ms. Adona explained that a person may touch an item without leaving DNA on it. (Ex. F at 366.) As such, the fact that Ms. Adona's opinion supported the State's argument does not make her opinion improper. Therefore, had counsel objected to the State's argument summarizing Ms. Adona's testimony, such an objection would have been non-meritorious and denied. Ground Ten is denied.

Resp. Ex. C1 at 266-67. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4. To the extent that the First DCA affirmed the trial court's denial on the merits,[14] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

Evidence supported the state's position that the victim's firearm was moved during the burglary, and vicarious possession through his co-defendants is sufficient to sustain Petitioner's conviction for armed burglary. As such, upon thorough review

---

[14] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

of the record and the applicable law, the Court concludes that the state court's decision is neither contrary to nor an unreasonable application of <u>Strickland</u>, and is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Ten is due to be denied.

**Remaining Grounds for Relief**

### *Ground Six*

Petitioner alleges that trial counsel was ineffective for failing to object/move for a mistrial after the victim, George Meyers, gave expert opinion testimony despite the state failing to list the victim as an expert. Doc. 1 at 13. He further argues that counsel should have objected when the state improperly alluded to the victim's improper opinion testimony during jury selection.

Petitioner raised this claim as ground six of his Rule 3.850 motion. Resp. Ex. C1 at 146-48. The trial court denied the claim in pertinent part:

> Sixth, Defendant argues counsel was ineffective for failing to object/move for a mistrial when a State witness, Mr. George Meyers, improperly gave his opinion. Specifically, Defendant argues Mr. Meyers's testimony describing what tool caused the damage to his home after it was burglarized, i.e., a [crow] bar, constituted improper expert testimony. (Ex. F at 267.) Defendant contends the State never listed Mr. Meyers as an expert, but only as a Category A witness, which amounted to a discovery violation, and counsel should have objected.
>
> The Florida Evidence Code provides that:
>
> If a witness is not testifying as an expert, the witness's testimony about what he or she perceived may be in the form of inference and opinion when:

> (1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness's use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
>
> (2) The opinions and inferences do not require a special knowledge, skill, experience, or training.

§ 90.701, Fla. Stat. (2010). See Alvarez v. State, 147 So. 3d 537, 542 (Fla. 4th DCA 2014) (citation omitted) (holding "[a]cceptable lay opinion testimony typically involves matters such as distance, time, size, weight, form and identity" . . . "Opinion testimony of a lay witness is only permitted if it is based on what the witness has personally perceived"); see also Wade v. State, 156 So. 3d 1004, 1023-24 (Fla. 2014) (detective's identification of duct tape, after detective observed it, not improper opinion testimony because "[t]he observation . . . is within the knowledge of an average person").

Here, this Court notes the State, in its Discovery Exhibit and Demand for Reciprocal Discovery filed February 16, 2011, listed George Henry Meyers as a Category A witness. (Ex. I.) However, pursuant to the above authority, the State was not required to list Mr. Meyers as an expert witness. The context in which Mr. Meyers testified shows he gave a lay opinion as to the damage he personally perceived to the sliding door at his home; Mr. Meyers's testimony was based on his personal observations. (Ex. F at 262-68.) His opinion did not require a special knowledge, skill, experience, or training. Because Mr. Meyers did not offer expert opinion testimony, had counsel made an objection on that basis, the objection would have lacked merit and been denied. Because Defendant has failed to establish counsel rendered deficient performance, Ground Six is denied.

Resp. Ex. C1 at 268-69. The First DCA per curiam affirmed the trial court's denial

without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[15] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Here, Petitioner challenges the victim's testimony about the damage to his sliding door. See Resp. Ex. B3 at 267. He explained that the door had been pried with considerable force and the track was bent down. Id. Such testimony did not amount to an expert opinion. Likewise, the state properly explained during jury selection that a burglary occurs if an individual breaks into a dwelling with an intent to commit a crime even if no items are stolen. Id. at 182. Nevertheless, in this case, Petitioner and his co-defendants did steal personal items from the victim. Thus, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Six is denied.

### Ground Eight

Petitioner asserts that trial counsel was ineffective for failing to object/move for a mistrial after Officer Myers gave expert opinion testimony regarding the physical appearance of the victim's home and the location of the firearm. Doc. 1 at 17. According to Petitioner, the state failed to list Officer Myers as an expert witness, resulting in a

---

[15] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

discovery violation.

Petitioner raised this claim as ground eight of his Rule 3.850 motion. Resp. Ex. C1 at 150-52. The trial court denied the claim as follows:

> Eighth, Defendant contends counsel was ineffective for failing to object/move for a mistrial when Officer Brian Myers offered his opinion that, when he walked through the crime scene, he observed a firearm that appeared to have been dropped or misplaced. Defendant also argues Officer Myers improperly provided an expert opinion that no DNA or fingerprint evidence was obtained in the instant case. Defendant argues because the State did not list Officer Myers as an expert, but as a Category A witness, the State committed a discovery violation. Defendant also avers counsel should have objected when Officer Myers offered this opinion because he did not offer such an opinion during his deposition.

> Here, this Court notes the State, in its Discovery Exhibit and Demand for Reciprocal Discovery filed February 16, 2011, listed B.A. Myers, Jacksonville Sheriff's Office, as a Category A witness. (Ex. I.) However, as demonstrated from the face of the record and pursuant to the above case law denying Ground Six, Ground Eight is similarly denied. (Ex. F at 310-12.) Officer Myers testified as a lay witness about his personal observation of the firearm, not as an expert. Indeed, his opinion did not require a special knowledge, skill, experience, or training. Despite Defendant's contentions, Officer Myers did not testify as an expert about DNA or fingerprint evidence found at the crime scene. (Ex. F at 309-22.)

> As to Defendant's argument alleging counsel should have objected when Officer Myers testified about his observation of the firearm, in that the Officer did not offer this testimony during his deposition, Defendant cannot show he suffered prejudice in this respect. The record shows Officer Myers also testified about a different, second firearm he observed at the crime scene. (Ex. F at 313-14.) Therefore, because the jurors heard evidence about another firearm, sufficient to establish

the crime of Armed Burglary, this Court finds the outcome of Defendant's trial would not have been different had counsel objected as suggested by Defendant. Because Defendant cannot fulfill his <u>Strickland</u> burdens, Ground Eight is denied in its entirety.

Resp. Ex. C1 at 269-70. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[16] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Officer Myers' testimony that the victim's home looked ransacked and there was a firearm that appeared to be dropped or misplaced in the victim's home was merely his personal observation of the home. Resp. Ex. B3 at 312. Nevertheless, even assuming this testimony was improper, the victim also testified that his firearm had been moved and thrown on the floor. As such, if Officer Myers' testimony had been omitted, the jury would have still been presented with evidence that Petitioner and/or the co-defendants were in possession of the victim's firearm during the burglary. Further, Officer Myers also testified that he observed a second firearm in the victim's backyard. <u>Id.</u> at 313. Petitioner cannot show that but for this challenged testimony, the outcome of the trial would have been different.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims is neither contrary to nor an

---

[16] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Eight is denied.

### *Ground Nine*

Petitioner argues that trial counsel was ineffective for failing to depose Officer Ray prior to trial and failing to move for a mistrial when Officer Ray testified without being previously deposed. Doc. 1 at 19. According to Petitioner, the state's presentation of Officer Ray's testimony was a discovery violation.

Petitioner raised this issue as ground nine of his Rule 3.850 motion. Resp. Ex. C1 at 153-54. The trial court denied this claim, finding in relevant part:

> In his ninth ground for relief, Defendant alleges counsel failed to depose Officer C.C. Ray prior to trial. Thus, Defendant argues, counsel should have objected/moved for a new trial when the State committed a discovery violation by presenting Officer Ray as a witness during trial. Defendant contends this failure by counsel, coupled with counsel's actions in Grounds Three and Four, demonstrate harmful error occurred, which deprived him of his due process rights.
>
> The record shows the State, in its Discovery Exhibit and Demand for Reciprocal Discovery filed February 16, 2011, listed C.C. Ray, Jacksonville Sheriff's Office, as a Category A witness. (Ex. I.) Because the State properly placed counsel on notice that Officer Ray would potentially testify as a witness during trial, the State did not commit a discovery violation. Therefore, had counsel objected when Officer Ray testified, on grounds of a discovery violation, such an objection would have been unfounded, meritless, and been denied.
>
> To the extent Defendant argues counsel failed to depose Officer Ray prior to trial, this Court finds Defendant's argument is refuted by the record. On June

28, 2011, counsel filed a Notice of Taking Deposition of Officer C.C. Ray. (Ex. J.) On June 29, 2011, counsel filed a Return of Service for Officer Ray's Subpoena for Deposition. (Ex. K.) The Clerk's Online Docket contains no indication that counsel failed to follow through with his notice of deposing Officer Ray. (Ex. L.)

Assuming <u>arguendo</u> counsel did not depose Officer Ray, this Court finds Defendant has failed to establish he suffered prejudice in this respect. Counsel conducted a meaningful cross-examination of Officer Ray during trial. (Ex. F at 322, 331-33.) Defendant cannot demonstrate he suffered prejudice in this respect, such that the outcome of his trial would have been different had counsel deposed Officer Ray. Accordingly, Ground Nine is denied.

Resp. Ex. C1 at 270-71. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[17] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. As the trial court pointed out, trial counsel effectively cross-examined Officer Ray regarding his limited interaction with Petitioner at the time of the arrest. Resp. Ex. B3 at 331-33. Officer Ray's testimony was primarily introduced to prove the charge of resisting arrest, and Petitioner's own trial testimony that he never ran from Officer Ray sufficiently challenged such. Therefore, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims is neither contrary

---

[17] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Nine is denied.

### *Ground Twelve*

Petitioner contends that trial counsel was ineffective for failing to object/move for a mistrial when the state knowingly presented false testimony from Shoats. Doc. 1 at 24-25. In support of this argument, Petitioner claims that Shoats testified at trial that during the burglary, he stayed outside as a lookout while Petitioner and co-defendant Ernest Smith went into the victim's home. Petitioner asserts, however, that Ann Smith testified at trial that she saw all three of the suspects enter the victim's home.

Petitioner raised this claim as ground twelve of his Rule 3.850 motion. Resp. Ex. C1 at 160-62. The trial court denied the claim, finding in pertinent part:

> In his twelfth argument, Defendant contends the State knowingly used the false, perjured testimony of co-defendant Donte Shoats. Defendant argues Mr. Shoats's testimony conflicted with Ms. Ann Smith's testimony, and therefore counsel should have objected because the State knowingly presented false, perjured testimony through Mr. Shoats. This Court construes this claim as alleging a <u>Giglio</u>[18] violation.
>
> To establish a <u>Giglio</u> violation, a defendant must show: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material. <u>Guzman v. State</u>, 868 So. 2d 498, 505 (Fla. 2003) (citing <u>Ventura v. State</u>, 794 So. 2d 553, 564-65 (Fla. 2001)). <u>See</u> <u>Walton v. State</u>, 3 So. 3d 1000, 1001 (Fla. 2009) (affirming trial court's denial of

---

[18] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

Giglio claim where "there is no reasonable possibility that it could have affected the jury's verdict or recommendation of a death sentence").

This Court finds Defendant has failed to fulfill the three requirements of establishing a Giglio violation. He has failed to establish the first prong, that the testimony given was false. The fact that Mr. Shoats's testimony conflicted with that of an eyewitness to the burglary, Ms. Ann Smith, does not render Mr. Shoats's testimony false and perjured. (Ex. F at 234-62, 286-309.) Indeed, Defendant has presented a purely speculative claim that because Mr. Shoats's testimony contradicted with that of Ms. Smith, Mr. Shoats's testimony was perjured and the State knowingly presented such testimony. Postconviction relief is not warranted based on "mere speculation." Crain v. State, 78 So. 3d 1025, 1038 (Fla. 2011). See Davis v. State, 736 So. 2d 1156, 1159 (Fla. 1999) (holding defendant cannot prevail in postconviction context on basis of "tenuous speculation"); Brown v. State, 827 So. 2d 1054, 1056 (Fla. 2d DCA 2002) (stating, in postconviction text, defendant may not prevail on "speculative, attenuated, and too fanciful" reasoning). Ground Twelve is denied.

Resp. Ex. C1 at 271-72. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[19] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Shoats' testimony does not amount to a Giglio violation. Further, trial counsel adequately cross-examined Ann Smith and Shoats about whether Shoats entered the house and highlighted the

---

[19] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

discrepancies in their testimony. Resp. Ex. B3 at 261, 303-05. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Accordingly, Ground Twelve is denied.

### Ground Thirteen

Petitioner claims that trial counsel was ineffective for failing to object/move to suppress/move for a mistrial when Officer Myers, during his trial testimony, misidentified the clothes that Petitioner was allegedly wearing at the time of the crimes. Doc. 1 at 26-27.

Petitioner raised this claim as ground thirteen of his Rule 3.850 motion. Resp. Ex. C1 at 162-63. The trial court denied that claim as follows:

> In his thirteenth ground for relief, Defendant alleges counsel should have objected/moved to suppress/moved for a mistrial when, on pages 315 and 316 of the trial transcripts, Officer Brian Myers misidentified the clothes the State alleged Defendant wore during the burglary. Specifically, Defendant contends "[i]t is therefore clear Officer Myers's identification was material and therefore materially contribute to the jury's verdict." As such, Defendant argues, counsel was ineffective.

> This claim is refuted by the record. During Mr. Shoa[ts's] testimony, he identified Defendant in the video surveillance tape. (Ex. F at 289-90.) During Officer Myers's testimony, the prosecutor initially showed co-defendant Ernest Smith's clothing to Officer Myers by mistake. (Ex. F at 315-16.) Immediately following this mistake, however, the

prosecutor corrected his mistake and provided Officer Myers the correct clothing belonging to Defendant. (Ex. F at 316-17.) Therefore, had counsel objected and moved to suppress said evidence or moved for a mistrial, on grounds of misidentification, such motions would have lacked merit and been denied. Because Defendant has failed to establish counsel was deficient in this respect, Ground Thirteen is denied.

Resp. Ex. C1 at 272-73. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[20] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. During cross-examination, trial counsel questioned Officer Myers about his mistake. Resp. Ex. B3 at 318. Officer Myers confirmed that he immediately labeled and initialed Petitioner's clothing at the time of his arrest, so despite his lapse in memory, he ultimately correctly identified Petitioner's clothing through his prior documentation. Id. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims because he had not demonstrated any deficient performance by his counsel is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Thirteen is due to be denied.

---

[20] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

### Ground Fourteen

Petitioner argues that trial counsel was ineffective for failing to further question two biased jurors during jury selection. Doc. 1 at 28-29. Petitioner raised this issue in ground fourteen of his Rule 3.850 motion. Resp. Ex. C1 at 163. The trial court denied the claim as follows:

> Fourteenth, Defendant avers counsel failed to further inquire of two prospective jurors during voir dire. Specifically, Defendant identifies the jurors as prospective juror 22 (on pages 65-66 of the trial transcripts) and prospective juror 38 (on pages 180-81 of the trial transcripts), who stated they or a family member had been victims of burglary. Defendant asserts these two jurors actually served on his jury and rendered a verdict against him. Because of counsel's failure to fully question jurors 22 and 38, Defendant contends his right to a fair trial before an impartial jury was violated.
>
> The Florida Supreme Court has enunciated the burden a defendant holds when raising such a postconviction claim:
>
>> "The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." <u>Lusk v. State</u>, 446 So. 2d 1038, 1041 (Fla. 1984) (citing <u>Singer v. State</u>, 109 So. 2d 7, 24 (Fla. 1959)). When a party seeks to strike a potential juror for cause, the trial court must allow the strike when "there is basis for any reasonable doubt" that the juror had "that state of mind which w[ould] enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial." <u>Singer</u>, 109 So. 2d at 23-24; <u>see also</u> <u>Ault v. State</u>, 866 So. 2d 674, 683 (Fla. 2003) (same). Courts have held that ambiguities or

uncertainties about a juror's impartiality should be resolved in favor of excusing the juror. See Cottrell v. State, 930 So. 2d 827, 829 (Fla. 4th DCA 2006) (quoting Huber v. State, 669 So. 2d 1079, 1081 (Fla. 4th DCA 1996) ("This court has held that it is error not to grant a challenge for cause when there is a basis for any reasonable doubt as to the juror's ability to render an impartial verdict, and that close cases should be resolved in favor of excusing the juror rather than leaving doubt.")); Smith v. State, 907 So. 2d 582, 585 (Fla. 5th DCA 2005) (same).

Carratelli v. State, 961 So. 2d 312, 318 (Fla. 2007).

This Court finds Defendant has failed to fulfill his postconviction burdens of establishing juror 22 and juror 38 were "actually biased" against Defendant, such that Defendant's conviction should be reversed and he should be granted postconviction relief. Juror number 22 did indicate his parents were the victims of a home invasion robbery. (Ex. F at 65-66, 137.) However, the prosecutor later questioned juror number 22, specifically asking if he "[w]ould be able to put that experience and what [he knew] concerning that case aside and be fair and impartial in this case." (Ex. F at 137.) In response, juror number 22 responded he would be able to be fair and impartial in hearing Defendant's case. (Ex. F at 137.)

Later during voir dire, the prosecutor asked the prospective jurors if there was anybody who had "been a victim of a burglary that [thought] this isn't the case for them." (Ex. F at 180.) The record indicates no prospective juror, including jurors 22 and 38, rose his/her hand. (Ex. F at 180.) Upon further questioning, juror 38 merely acknowledged his vehicle had been broken into; he did not state that because of this experience, he would not be fair and impartial in adjudicating Defendant's case. (Ex. F at 180-81.) Indeed, all the jurors, including juror 38, immediately stated they agreed to follow the law. (Ex. F at 182.) Through their responses to subsequent questioning, this Court finds both juror 22 and juror 38

were rehabilitated, such that they were fair and impartial arbiters of Defendant's case.

Moreover, this Court finds Defendant has failed to fulfill his burden of establishing prejudice under <u>Strickland</u>. As noted <u>supra</u>, postconviction relief is not warranted based on "mere speculation." <u>Crain</u>, 78 So. 3d at 1038. <u>See</u> <u>Davis</u>, 736 So. 2d at 1159 (holding defendant cannot prevail in postconviction context on basis of "tenuous speculation"). Indeed, a defendant may not prevail on "speculative, attenuated, and too fanciful" reasoning in seeking to demonstrate prejudice. <u>Brown</u>, 827 So. 2d at 1056. Here, this Court finds Defendant's assertions of prejudice are based upon purely speculative reasoning: Defendant seeks to argue that because the two jurors were victims of burglary or had family members who had been, they were automatically biased against Defendant and would not be fair in hearing his case. In light of the foregoing and the record before it, this Court finds Defendant is not entitled to postconviction relief and Ground Fourteen is denied.

Resp. Ex. C1 at 273-75. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[21] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Although a juror may make initial statements during voir dire suggesting potential bias, subsequent responses may establish that the juror can be impartial, especially when combined with appropriate court instructions to the venire. <u>See</u> <u>Bell v. United States</u>, 351 F. App'x 357, 359 (11th Cir. 2009) (holding the petitioner did not show that juror was actually biased, and

---

[21] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

thus, counsel was not deficient for failing to strike juror). "Assessing jurors during voir dire also requires an evaluation of demeanor and credibility. Review of counsel's performance is highly deferential in any case, but the case for deference is even greater when counsel is evaluating credibility." Id. at 360.

Here, despite their experience with similar crimes, juror 22 and juror 38 confirmed that they could put that experience aside and be fair and impartial in Petitioner's case. Resp. Ex. B2 at 137, 179-82. Thus, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Fourteen is due to be denied.

### Ground Fifteen

Petitioner asserts that trial counsel was ineffective for failing to file a motion for mistrial because the weight of the evidence did not support a conviction for armed burglary. Doc. 1 at 30. According to Petitioner, the state did not present any physical or eyewitness testimony that Petitioner was in possession of a firearm.

Petitioner raised this claim as ground fifteen of his Rule 3.850 motion. Resp. Ex. C1 at 165-67. The trial court denied the claim as follows:

> Finally, Defendant argues counsel should have objected or moved for a mistrial by arguing the weight of the evidence did not support a conviction for Armed Burglary. Specifically, Defendant takes issue with Ms.

45

Adona's testimony describing her DNA findings regarding the firearm at the crime scene. This Court adopts its reasoning denying Ground Ten, and adopts it herein. Further, in this argument, this Court finds Defendant is seeking to challenge the sufficiency of the evidence presented against him to prove he committed Armed Burglary, couched in terms of ineffective assistance of trial counsel. This Court finds such a claim is procedurally barred because it is not cognizable in the instant postconviction motion. See Johnson, 985 So. 2d at 1215; Betts, 792 So. 2d at 590; Jackson, 640 So. 2d at 1174. Accordingly, Ground Fifteen is denied.

Resp. Ex. C1 at 275-76. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. C4.

To the extent that the First DCA affirmed the trial court's denial on the merits,[22] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Here, the prosecutor argued that Petitioner committed an armed burglary because he and/or a co-defendant entered the home with a firearm or armed themselves while in the home. Resp. Ex. B4 at 423. Evidence supported the state's position that the victim's firearm was moved during the burglary and a second firearm was found in the victim's backyard. As such, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision is neither contrary to nor an unreasonable application of Strickland, and is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Fifteen is

---

[22] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

due to be denied.

### *Ground Sixteen*

Petitioner alleges that the trial court erred in sentencing Petitioner for armed burglary because the jury did not make a special finding that Petitioner actually possessed a firearm. Doc. 1 at 32. Petitioner appears to argue that the jury was required to make such a finding pursuant to section 775.087(2), Florida Statutes, before Petitioner could be sentenced for armed burglary. Id. As such, Petitioner argues that this sentencing error is in violation of the principles outlined in Apprendi v. New Jersey, 530 U.S. 466 (2000).

Respondents initially assert that Petitioner failed to exhaust this claim because Petitioner failed to object to the jury instructions and verdict form during trial. Resp. at 50-54. The Court disagrees. Although Respondents correctly note that Petitioner did not object to the verdict form and instructions, the record reveals that Petitioner, through appellate counsel, raised this issue in a motion to correct sentencing error under Florida Rule of Criminal Procedure 3.800(b)(2) prior to filing his initial brief on direct appeal. Resp. Ex. B5 at 4. The trial court denied the claim as follows:

> In the instant Motion Defendant alleges that because he was convicted under a principal theory of prosecution, the trial court erred in sentencing him to twenty-five years incarceration on the basis of being "armed" during the course of the burglary. Specifically, Defendant argues that given the principal theory of prosecution, the jury's finding that he was "armed with a firearm during the commission of the offense," does not reflect a finding that he actually or personally possessed a firearm during the commission of the offense. Thus, according to Defendant, his conviction should have been treated as the second-degree felony

of unarmed burglary to a dwelling for sentencing purposes. As such, Defendant also argues his scoresheet was incorrect in that his maximum sentence should have been fifteen years for unarmed burglary of a dwelling, and his maximum sentence was erroneously increased in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

In support of his position, Defendant presents a two-fold argument. First, he states that actual possession of a firearm is not required to sustain a conviction for armed burglary or a conviction for armed robbery (i.e., a conviction for either offense may be sustained on a principal theory of prosecution). <u>See</u> <u>State v. Retalic</u>, 902 So. 2d 315, 316 (Fla. 2d DCA 1998) (armed burglary); <u>Powell v. State</u>, 724 So. 2d 1207, 1207 (Fla. 5th DCA 2005) (armed burglary); <u>Jones v. State</u>, 648 So. 2d 1210, 1211 (Fla. 4th DCA 1995) (armed robbery); <u>Stripling v. State</u>, 645 So. 2d 589, 590 (Fla. 3d DCA 1994) (armed robbery). Second, he compares the firearm reclassification statute, section 775.087(1) - the application of which requires proof of actual or personal possession of a firearm - to the robbery "reclassification" statute, section 8l2.l3(2)(a), and argues that the statutory construction and reasoning in the case law is similar enough to conclude that section 812.13(2)(a) also requires proof of actual or personal possession of the firearm. <u>Compare</u> <u>State v. Rodriguez</u>, 602 So. 2d 1270 (Fla. 1992 ), <u>Robins v. State</u>, 602 So. 2d 1 272 (Fla. 1992), <u>Willingham v. State</u>, 541 So. 2d 1240 (Fla. 2d DCA 1989), <u>Ngai v. State</u>, 556 So. 2d 1130 (Fla. 3d DCA 989), <u>and</u> <u>Postell v. State</u>, 383 So. 2d 1159 , 1162 (Fla. 3d DCA 1980), <u>with</u> <u>State v. Burris</u>, 875 So. 2d 408 (Fla. 2004). Defendant then concludes that because an armed robbery conviction can be sustained on a principal theory but only "reclassified" on the basis of being "armed" during the commission of the robbery upon a finding of actual possession of a firearm, the same must be true when simple burglary is "reclassified" to armed burglary under section 810.02(2)(b).

Defendant's argument fails because his conviction was not actually reclassified from simple burglary to armed burglary pursuant to the general enhancement

statute, section 775.087(1); rather, the offense with which Defendant was originally charged and ultimately convicted was Armed Burglary as provided in section 810.02(2)(b), a first-degree felony offense punishable by life. Defendant was sentenced pursuant only to section 810.02(2)(b), which itself provides for a statutory maximum sentence of life incarceration. See § 810.02(2)(b), Fla. Stat. (2011). Thus, Defendant's conviction for Armed Burglary was not a true reclassification based on the use of a firearm as reclassification is understood in section 775.087(1).

Moreover, Defendant does not sufficiently explain how the same statutory provision can be interpreted one way for purposes of conviction and a different way for purposes of sentencing. He acknowledges that it is well settled that a conviction under section 810.02(2)(b) can be sustained based on a principal theory. See Retalic, 902 So. 2d at 316; Powell, 724 So. 2d at 1207. However, he urges this Court to adopt the position that, although he was properly convicted as a principal of Armed Burglary in violation of section 810.02(2)(6), he was improperly sentenced under that same statutory provision because, for sentencing purposes only, section 810.02(2)(b) should be construed as requiring proof of actual or personal possession of a firearm. Defendant has presented no precedent, binding or otherwise, which conclusively states that proof of actual possession of a firearm is required to sentence a defendant under section 810.02(2)(b). Instead, he attempts to analogize the felony reclassification for use of a firearm under section 775.087(1) with the "reclassification" of simple robbery to armed robbery under section 812.13(2)(a), and then extrapolate this comparison to the "reclassification" of simple burglary to armed burglary under section 810.02(2)(b). Such analogy is flawed because, as stated supra, armed burglary is not actually a true reclassification of simple burglary  and because he has not offered precedential support for the proposition that the same statutory provision can be interpreted differently for the purposes of conviction and sentencing. In the absence of controlling authority, this Court declines to grant Defendant's requested relief.

Resp. Ex. B5 at 25-28. Petitioner, with the help of appellate counsel, challenged the trial court's denial on direct appeal. Resp. Ex. B7 at 11. The state filed an answer brief arguing that Petitioner failed to preserve this issue and also asserting that the claim was otherwise without merit. Resp. Ex. B8. In addressing the merits, the state reiterated the trial court's denial by arguing that Petitioner was convicted and sentenced pursuant to section 810.02(2)(b), which does not require a specific finding of actual possession. Id. at 11. Petitioner filed a reply brief. Resp. Ex. B9. The First DCA per curiam affirmed Petitioner's judgment and convictions without a written opinion. Resp. Ex. B10.

In the event the state appellate court did adjudicate this claim on the merits, the state court's decision is entitled to deference. Petitioner's conviction for armed burglary on a principal theory was proper because the crime is "not dependent of proof of . . . actual possession of . . . [a] gun." State v. Retalic, 902 So. 2d 315, 316 (Fla. 5th DCA 2005). Likewise, Petitioner's armed burglary conviction was not subject to reclassification under section 775.087, because the use of a firearm or weapon was an essential element of the offense. § 775.087(1), Fla. Stat. (precluding reclassification if the "use of a weapon or firearm is an essential element" of the offense). Accordingly, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts

in light of the evidence presented in the state court proceedings. Ground Sixteen is due to be denied.

### *Ground Seventeen*

Petitioner alleges that the state committed a "fraud upon the court" when the prosecutor, during opening statements, erroneously told the jury that Shoats had already been convicted of the same charges for which Petitioner was on trial. Doc. 1 at 35. According to Petitioner, he recently discovered that Shoats was not adjudicated guilty of the crimes until after Petitioner's trial. He alleges that this false representation to the jury constituted a manifest injustice that violated his due process rights. He also appears to claim that trial counsel was ineffective for failing to discover this evidence and present it during trial.

Petitioner admits that he did not raise this claim in state court, and thus, acknowledges that it is unexhausted and procedurally defaulted. <u>Id.</u> at 35. He, however, attempts to overcome this procedural bar by claiming that a fundamental miscarriage of justice will result if this claim is not addressed on the merits. <u>Id.</u>

A petitioner may obtain review of the merits of a procedurally barred claim to remedy a fundamental miscarriage of justice if he satisfies the actual innocence "gateway" established in <u>Schlup</u>, 513 U.S. at 298. "The '<u>Schlup</u> gateway' is meant to prevent a constitutional error at trial from causing a 'miscarriage of justice' and 'the conviction of one who is actually innocent.'" <u>Kuenzel v. Comm'r, Ala. Dep't of Corr.</u>, 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting <u>Schlup</u>, 513 U.S. at 324); <u>see</u> <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted)

(recognizing that the fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "actual innocence" rather than mere "legal innocence"). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

Petitioner is correct that, as previously mentioned by the Court, Shoats did not enter his pleas of guilty to the offenses until after Petitioner's trial. However, while the prosecutor misstated this fact during his opening arguments, the Court cannot find that this error alone constitutes "new reliable evidence" that demonstrates no reasonable juror would have found Petitioner guilty. Indeed, when Shoats testified during Petitioner's trial, he explained that he had been charged with the same offenses as those for which Petitioner was on trial (Resp. Ex. B3 at 287), and he did not state that he had been convicted of the offenses at that time (id. at 236-309). Regardless, Shoats admitted to committing the armed burglary and explained that Petitioner also participated in the crime. Id. The Court finds that this is not an "extraordinary" case under the Schlup standard. As such, this claim is unexhausted and procedurally defaulted. Petitioner has failed to show either cause and prejudice from the default, or

that a fundamental miscarriage of justice will result if the claim is not addressed on the merits. Therefore, he is not entitled to federal review of this claim. Ground Seventeen is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.      If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[23]

---

[23] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of May, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:     Jonathan Christopher Bell, #J35129
       Michael Brent McDermott, Esq.